(140 App. Div. 272.)

SEEMAN et al. v. LEVINE et al.

(Supreme Court, Appellate Division, First Department. October 21, 1910.)

FRAUDULENT CONVEYANCES (§ 47*)—BULK SALE OF STOCK OF GOODS—INQUIRIES FOR AND NOTICE TO CREDITORS.
    Laws 1907, c. 722, § 1, now Personal Property Law (Consol. Laws, c. 41) § 44, providing that the transfer in bulk of a stock of goods shall be presumed to be fraudulent against the creditors of the transferror, unless the proposed transferee shall make inquiry for and notify the creditors of the transferor, does not require him to do this as to creditors of one who had sold to his transferror.
    [Ed. Note.—For other cases, see Fraudulent Conveyances, Dec. Dig. § 47.*]
    Laughlin, J., dissenting.

Appeal from Appellate Term.

Action by Joseph Seeman and others against Louis Levine and another on a third party bond given in attachment proceedings. By permission of the Appellate Term, defendants appeal from a deter-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mination thereof (67 Misc. Rep. 74, 121 N. Y. Supp. 645), affirming a judgment of the Municipal Court for plaintiffs. Reversed, and judgment directed for defendants.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Philip Cohen (M. Spencer Bevins, of counsel), for appellants.

Clarence McMillan (Norman G. Hewitt, on the brief), for respondents.

CLARKE, J. Julius Chill had a grocery store at 771 Amsterdam avenue. On February 4, 1909, plaintiffs brought an action against Chill for goods sold and delivered, obtained a warrant of attachment, and made a levy on the stock of groceries and fixtures in said store valued at $390, whereupon the defendant Levine, as claimant of the property, gave the bond herein sued upon; the condition being:

"That if, in an action upon this bond, commenced within three months thereafter, said claimant will establish that he was the general owner of the property claimed at the time of the seizing, or, if he fails so to do, that he will pay * * * the value thereof, with interest, then this obligation to be void; otherwise, to remain in full force and virtue."

It appears that Chill, by a bill of sale dated January 27, 1909, sold "all the stock of goods and other merchandise, of whatsoever description, now contained in the grocery store and basement in the premises known as No. 771 Amsterdam avenue, * * * also all the fixtures, of whatsoever description, in said store, except the cash register, all and everything free and clear from any mortgage, claim, or incumbrances," to one Louis Sakauf, and also assigned to him the lease of the premises. Sakauf sold by a bill of sale to Levine, on February 2d, the good will, right, title, and interest of his grocery store, together with the stock and fixtures, except one tub of butter and one case of eggs, situated and contained in the store of the premises known by the No. 771 Amsterdam avenue. In an affidavit attached to the bill of sale Sakauf swore that he was the absolute owner of the grocery store, that he owed no bills, and that there were no mortgages of any kind whatsoever on said premises.

There was evidence that Chill, at the time that he conveyed, had creditors who were unpaid at the time of the trial. There was no evidence that Sakauf had any creditors. Levine testified without contradiction that Sakauf called him up by telephone, asking him to call in reference to some business, and that he did so; that Sakauf said, "I bought this place of business, and would like to dispose of it;" that "he is not the kind of a man for this kind of business;" that Sakauf "explains me that he sells everything in the store, excepting one tub of butter and one case of eggs, which he is not paid for, and that he wants to return, and also a register was there, that was mortgaged, and this he told me that I have got to return. I have asked him, 'Do you owe anything else on the stock, or have you any other mortgages?' 'Nothing at all, except the tub of butter and the case of eggs. I bought the store, and it ain't for me. I cannot make any success there.' He didn't buy any goods—just what he bought—

he cannot make out, and this he wants to return." After consider-able discussion as to price, Rosenbaum, Levine's partner, having been sent for and participating therein, an agreement was reached at $390, the bill of sale was prepared by a notary, the money paid, and delivery and possession given.

The Municipal Court gave judgment for the plaintiffs, which was affirmed upon appeal by the Appellate Term by a divided court, from which determination this appeal is taken. In the prevailing opinion it is said:

"One of the issues upon the trial was whether the bill of sale which Chill executed to Sakauf and the tranfer of his property which took place under it was valid or invalid. It is conceded that, except for the presumption that the sale was fraudulent and illegal, which arises from section 44 of the personal property law [Consol. Laws, c. 41], the evidence was insufficient to justify a judgment for the plaintiff."

The statute in force at the time of the transactions under consideration, and which is now section 44 of the personal property law (chapter 41, Consol. Laws; chapter 45, Laws 1909), was chapter 722 of the Laws of 1907. Section 1 thereof provided as follows:

"The transfer of any portion of a stock of goods, wares or merchandise, otherwise than in the ordinary course of trade in the regular and usual prosecution of the transferror's business, or the transfer of an entire such stock in bulk shall be deemed to be fraudulent and void as against the creditors of the transferror, unless the proposed transferee shall at least five days before the transfer, in good faith, make full and explicit inquiry of the transferror as to the names and addresses of each and all of the creditors of the transferror, and unless such transferee shall at least five days before the transfer, in good faith, notify or cause to be notified of the proposed transfer, personally or by registered mail, each of the creditors of the transferror of whom such transferee has knowledge or can by the exercise of reasonable diligence acquire knowledge."

Chapter 528 of the Laws of 1902, the source from which the above statute was derived, provided that such a sale of merchandise in bulk "shall be fraudulent and void as against the creditors of the seller" unless certain specified things were done. That act was declared to be unconstitutional in Wright v. Hart, 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N. S.) 338. As amended by chapter 569 of the Laws of 1904, the legislation under consideration was declared constitutional by the learned Appellate Division in the Second Department in Sprintz v. Saxton, 126 App. Div. 421, 110 N. Y. Supp. 585, holding that the substitution of the words "will be presumed fraudulent and void" for the phrase in the original statute, "shall be fraudulent and void," simply prescribed a rule of evidence. In view of that decision, we limit our inquiry to the question whether the defendants in the case at bar come within the purview of the statute.

What the statute provides is that the transfer in bulk shall be presumed to be fraudulent and void as against the creditors of the transferror unless the proposed transferee shall make inquiry of the transferror as to the name and addresses of the creditors of the transferror, and unless such transferee shall notify or cause to be notified each of the creditors of the transferror of the proposed transfer. The question here is as to the title of Levine. His transferror was Sa-

kauf. Levine did make full and explicit inquiry of his transferror, Sakauf, as to his creditors, and was told that there were none, except the sellers of the tub of butter and the case of eggs and the cash register, which was mortgaged, all of which were returned to their owners, so that it is established that the transferee of this transaction did make the proper inquiries. There were no creditors of the transferror to notify of the proposed transfer, and there were no creditors of Sakauf at the time of the trial.

We have, then, the transaction between Levine and Sakauf, not only in strict accordance with the provisions of the statute, but evidencing good faith and fair dealing on both sides, the payment of full value, the disclosing of goods to which Sakauf had no title and could not convey, and the return of those articles to their real owners. If Levine was required to go further, and show compliance with the statute in the transaction between Sakauf and Chill, then, no matter how many prior transfers there may have been, he would have been required to show the same as to each; and if the rule of evidence as to the presumption of fraud is to be so interpreted it appears to us that the present statute would be as susceptible to the criticisms made by the Court of Appeals in Wright v. Hart, supra, as the statute there under consideration. We do not think that the statute should be so construed.

It follows, therefore, that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs and disbursements to the appellant, and judgment directed for the defendants, with costs in the Municipal Court and at the Appellate Term.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ., concur. LAUGHLIN, J., dissents, on the prevailing opinion at Appellate Term.